**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA**

**v.**  Case No. 3:03cr195

**ALEJANDRO REYES,**

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Alejandro Reyes's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 529.) The United States responded in opposition (the "Opposition"). (ECF No. 537.) Reyes replied. (ECF No. 538.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

## I. Background

Reyes pled guilty to conspiracy to distribute more than one kilogram of heroin, more than five kilograms of cocaine hydrochloride, and more than fifty grams of cocaine base. (Plea Agreement ¶ 1, ECF No. 143.) Reyes and a codefendant began the conspiracy after being "confined for prior criminal activity in New York," "with Reyes as the primary source of supply for cocaine hydrochloride and heroin." (PSR ¶ 48, ECF No. 526.) Reyes lived in New York and would "occasionally travel to Richmond to deliver the drugs" and direct others to similarly travel between New York and Richmond to deliver and distribute these substances. (*Id.*)

Prior to sentencing, the probation office prepared a Presentence Report ("PSR") for Reyes. In the PSR, the probation officer noted the presence of firearms in the drug trafficking conspiracy. (PSR ¶¶ 48, 53.) The probation officer applied a four–level enhancement to Reyes's offense level for his role as an organizer in the conspiracy. (*Id.* ¶ 51.) The probation officer also found Reyes to be a career offender because Reyes's offense of conviction constituted a felony controlled substance offense and Reyes had at least two prior felony convictions for either a crime of violence or a controlled substance offense.[1] (*Id.* ¶ 65.)

Reyes's Total Offense Level of 39 and Criminal History Category of VI, however, did not flow from his career offender designation, but, rather, from his criminal history points and relevant offense conduct. (*Id.* Wksht D, at 1.) The probation officer calculated Reyes's sentencing guidelines range as 360 months to life. (*Id.*) When the Court sentenced Reyes, courts deemed the United States Sentencing Guidelines ("USSG") mandatory. *See United States v. Booker*, 543 U.S. 220, 233 (2005); *see also Beckles v. United States*, 137 S. Ct. 886, 894 (2017) ("The Guidelines were initially binding on district courts but this Court in *Booker* rendered them effectively advisory."). On November 12, 2003, the Court sentenced Reyes to 360 months of incarceration followed by 5 years of supervised release. (J. 2, ECF No. 248.) Reyes did not appeal. On June 23, 2020, this Court reduced Reyes's sentence by six years pursuant to Section 404 of the First Step Act, lowering his prison term from 360 months to 288 months. (June 23, 2020 Mem. Op & Order, ECF Nos. 520–21.)

Reyes is currently housed at Butner Medium II FCI. The Bureau of Prisons ("BOP") states that Reyes will be released on February 7, 2024. *See* Bureau of Prisons, *Fed. Inmate*

---

[1] The two predicate felony convictions were "Attempted Robbery–3rd" and "Criminal Sale of a Controlled Substance–3rd." (PSR ¶ 65.)

*Locator*, https://www.bop.gov/inmateloc/. As of February 5, 2021, the BOP reports that 370 inmates at Butner Medium II FCI have tested positive for COVID-19. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

In his Motion for Compassionate Release, Reyes describes his circumstances at Butner Medium II FCI:

> Mr. Reyes's incarceration at Butner Medium II does not allow for social distancing. He is presently being housed in a very small cell with a cellmate. Their beds are within a foot of each other. His cell is one amongst many at his dorm at Butner. There are 12 toilets for 160 people, and inmates share televisions, computers, phones, showers, water fountains, and sinks. At mealtime, all of the inmates in Mr. Reyes's section move together without the benefit of social distancing and eat together, also without any safe spacing. Mr. Reyes cannot be properly protected and is vulnerable to the rapid spread of the coronavirus in his current situation. The spread of the virus at the Butner complex is among the worst in the Federal Bureau of Prisons, as evidenced by the very significant number of positive and recovered cases.

(Mot. 8, ECF No. 529.) Reyes asserts that he has "a BMI of over 41. He also suffers from hypertension and reports that he has trouble breathing," (*id.* 3–4), which makes him more likely to face an "increased risk of death or severe injury requiring hospitalization from COVID-19," (*id.* 11). Reyes provided BOP medical records to the Court showing that on June 24, 2020 his blood pressure read 137/93[2] and his BMI equaled 41.6. (ECF No. 533–1 at 2–3.) Reyes avers that upon release he plans to "live with his friend . . . in Ithaca, New York," where he can practice social distancing and work for a cleaning company. (Mot. 21–22.)

The United States opposes Reyes's request for compassionate release, arguing that his "morbid obesity and high blood pressure" constitute extraordinary and compelling reasons for compassionate release consideration, but that "he fails to meet other criteria." (Opp'n 7, ECF

---

[2] The Centers for Disease Control and Prevention define hypertension as blood pressure equal to 140/90 or higher. *See* CDC, About High Blood Pressure, *available at*: https://www.cdc.gov/bloodpressure/about.htm.

3

No. 537.) The United States critiques Reyes's release plan because it could "increase the risk of exposure for defendant, his family, and anyone with whom come into contact." (*Id.*) The United States also argues that the statutory sentencing factors weigh against release because Reyes distributed "vast quantities of heroin, cocaine hydrochloride, and cocaine base," held a leadership role in the conspiracy, and "possessed firearms through the course of the conspiracy and also traded drugs for firearms." (Opp'n 8.) The United States points to Reyes's "serious criminal history, which included . . . crimes of violence and drug trafficking offenses" as a reason to deny compassionate release. (*Id.*)

In reply, Reyes argues that "[t]he Court should keep in mind that Mr. Reyes has now spent the last 17 years in federal prison and has demonstrated outstanding conduct and rehabilitation." (Reply 21, ECF No. 538.) Reyes also states "[h]e has had no disciplinary incidents in the last 9 years, has worked hard in prison industry programs, and has presented very strong references from people who have witnessed his progress in prison." (*Id.*)

After reviewing Reyes's Motion and recognizing the "rapidly changing circumstances regarding COVID-19" and related vaccine development, the Court asked the Parties to file a joint status update regarding the BOP vaccine distribution plan and whether Reyes would have priority access to the vaccine. (Jan. 5, 2021 Order, ECF No. 539.) On January 13, 2021, the Parties informed the Court that although FCC Butner had received limited doses of the COVID-19 vaccine in December 2020 and January 2021, "there is no way of knowing when or predict when, Mr. Reyes may be offered the vaccine." (Jt. Status Update 1, ECF No. 540.)

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C.

4

§ 3582(c)(1)(A).[3] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, No. 19-7668, 2021 WL 218888, at *8 (4th Cir. Jan. 22, 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[3] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions

6

warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

  **B.**   **Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283. As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release

7

when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release, though not binding, further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13.[4] These

---

[4] The United States Sentencing Guideline § 1B1.13 provides that:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Reyes has sufficiently exhausted his administrative remedies.

Next, the Court finds that Reyes's health conditions raise serious concerns about his well-being should he contract COVID-19 while incarcerated, making him eligible for compassionate release consideration. In its Opposition, the United States concedes that Reyes's "morbid obesity and high blood pressure are 'extraordinary and compelling reasons'" for compassionate release consideration.[5] (Opp'n 7.) Because Reyes's medical conditions entitle him to compassionate release consideration, the Court turns to statutory sentencing factors and the relevant Guidelines policy statement.

After considering the relevant statutory sentencing factors and the policy statement, the Court will deny the Motion. Pursuant to USSG § 1B1.13, the Court should consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the

---

           (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
           (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

[5] Reyes claims to have suffered from tuberculosis in the past, making it difficult for him to breathe. The medical records provided to the Court note "tuberculosis exposure" and a corresponding status of "resolved" in 2004. (ECF No. 533–1 at 13.) The Parties do not otherwise identify documented breathing issues in Reyes's medical records and the Court did not find any such remarks while reviewing his medical records.

reduction aligns with the policy statement. *See McCoy*, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"). Upon review, Reyes's criminal history and underlying conviction demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. When Reyes committed the underlying offense, he was 29 years old and had already committed multiple felony offenses as an adult. Reyes not only dealt significant quantities of illegal drugs, he was seen exchanging firearms for drugs. Looking to the § 3142(g) factors, Reyes's repeated offenses reflect that he presents a danger both to himself and the community.

Turning to the § 3553(a) factors, the Court acknowledges that Reyes, now forty-seven years old, has served most of his sentence and will be released in approximately three years. Additionally, upon release Reyes will begin to serve a five-year supervised release term for his offense. Although the Parties indicate that Reyes has not committed any disciplinary infractions during the past nine years in federal detention, his previous criminal history suggests that the Court should consider public safety and whether his sentence promotes respect for the law.[6] The Court finds that while Reyes's sentence adequately deters criminal conduct, the seriousness of Reyes's offense and the need to protect the public outweigh immediate release.

Reyes further contends that his Motion should be granted because he has engaged in BOP programming and has taken numerous steps to improve himself while incarcerated. (Mot. 20.) Reyes also states that he has worked consistently since 2005, saving money to utilize upon release. (*Id.*) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district

---

[6] Also, while Reyes appears to present a release plan that might work, it has not been presented to the United States Probation Office so that it can be approved by this Court.

10

court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397.

As documented in this Court's June 23, 2020 Memorandum Opinion granting Reyes a sentence reduction pursuant to Section 404 of the First Step Act, (ECF No. 520), Reyes displays progress in his rehabilitation and this Court commends him for doing so. While Reyes's participation in work and vocational programs are commendable, these post-rehabilitation measures do not warrant his early release in light of the seriousness of his conviction and the time remaining on his sentence.

Finally, the Court recognizes the grave health risks prisoners are facing during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. Although as of three weeks ago Reyes had not yet received the vaccine himself, the record reflects that Butner has received two shipments of the COVID-19 vaccine. (Jt. Status Update, ECF No. 540.) Beyond the instant case, federal inmates nationwide are starting to receive COVID-19 vaccinations. *See, e.g.*, *United States v. Jones*, No. 3:19cr105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021) (noting defendant had received his first COVID-19 vaccination on January 6, 2021). The Court appreciates the Parties' joint status update regarding the BOP vaccination plan and vaccine distribution at Butner, and hopes that Reyes soon gets the chance to receive a COVID-19 vaccine.

In sum, the Court concludes that the current record does not justify Reyes's immediate release from federal imprisonment.

## IV.  Conclusion

For the reasons explained above, the Court will deny the Motion.  (ECF No. 529.)

An appropriate Order shall issue.

                                                       /s/  
                                     M. Hannah Lauck  
                                     United States District Judge

Date: February 5, 2021  
Richmond, Virginia